STATE of Missouri, Respondent,

v.

Melinda Lorene TABER, Appellant.

No. WD 59304.

Missouri Court of Appeals,
Western District.

Feb. 13, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 2002.

Application for Transfer Denied
May 28, 2002.

Donald W. Petty, Liberty, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, C.J., EDWIN H. SMITH, J., and TURNAGE, Sr.J.

EDWIN H. SMITH, Judge.

Melinda L. Taber appeals her conviction for possession of a controlled substance with intent to distribute, § 195.211,[1] after a bench trial in the Circuit Court of Benton County. As a result of her conviction, she was sentenced to five years imprisonment in the Missouri Department of Corrections.

In the appellant's sole point on appeal, she claims that the trial court erred in overruling her pretrial motions to suppress and admitting at trial the marijuana seized during the search of her purse, after being stopped for a perceived traffic violation and being arrested on an outstanding warrant, which was unrelated to the stop, and any incriminating statements she made to law enforcement officials concerning the marijuana because the evidence sought to be suppressed was the fruit of an unlawful search and seizure.

We reverse and remand.

## Facts

On June 5, 1999, Trooper Michael Bracker of the Missouri State Highway Patrol was on duty, traveling southbound on Highway 65 in Benton County, when he observed a northbound vehicle being driven by the appellant, which did not have a front license plate or a license plate on the trailer it was towing. Believing that the vehicle and trailer were not in compliance with the licensing and registration laws of Missouri, Trooper Bracker activated his

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

emergency equipment and stopped the vehicle.

After exiting his patrol car, Trooper Bracker approached the stopped vehicle. As he did so, he noticed a Kansas license plate displayed on the rear of the vehicle, which he initially had been unable to see because of the trailer. As a result of his training, Trooper Bracker knew that Kansas's registration laws differed from Missouri's such that the vehicle was not in violation of Missouri's laws, as he originally believed. Nonetheless, Trooper Bracker continued toward the vehicle and initiated contact with the appellant, who was the sole occupant. He informed her, "I stopped you because there was no front plate on the vehicle or trailer plate on the trailer, but I observed a Kansas plate as I approached your vehicle." He never told her that she was free to leave. However, he did ask her if he could see her driver's license and registration. Because she did not have her driver's license with her at the time, she gave him a Kansas state identification card.

Armed with the appellant's identification, Trooper Bracker went back to his patrol car and radioed for a license and record check to determine whether the appellant possessed a valid driver's license and whether there were any outstanding warrants for her arrest. The license check disclosed that she had a valid Kansas operator's license. The record check disclosed that she was wanted on a misdemeanor warrant out of Pettis County, Missouri. The trooper immediately arrested the appellant on the warrant, handcuffing and placing her in the back of his patrol vehicle.

While under arrest, the appellant was questioned by Trooper Bracker as to whether there was anything in her vehicle or on her person about which he needed to know. She indicated that there was not.

Then, "as a matter of courtesy," Trooper Bracker asked the appellant if she wanted him to retrieve her purse from her vehicle. She indicated that she did. Having retrieved the appellant's purse from her vehicle, the trooper searched it. Inside the purse, he found burnt marijuana cigarette butts, a small plastic bag and a large Ziploc bag of what appeared to be marijuana, a partially smoked marijuana cigarette, and approximately $5,800 in cash. Trooper Bracker seized the marijuana and cash, and then searched the appellant's vehicle for further contraband, but found none. The trooper then returned to his patrol car and informed the appellant that she was under arrest for possession of marijuana and advised her of her *Miranda* rights.

As Trooper Bracker was transporting the appellant to the Benton County Jail, she informed him, *inter alia,* that the marijuana found in her purse was hers. When they arrived at the jail, Trooper Bracker was joined by Benton County Deputy Sheriff David Fajen. They both questioned the appellant about the items seized from her purse. The appellant informed them that she was meeting a group of friends at Starrett Creek, and that in exchange for a room, food and gas for a boat, she would provide them with marijuana. The appellant also told them that she had purchased a quarter of a pound of marijuana for $300 in Kansas City. Trooper Bracker weighed the marijuana seized from the appellant's purse and determined the combined weight to be 139 grams.

On October 28, 1999, the appellant was charged by information in the Circuit Court of Benton County with the class B felony of possession of a controlled substance with intent to distribute, § 195.211. On May 10, 2000, the appellant filed a motion to suppress the marijuana and cash seized from her purse and a motion to suppress any incriminating statements she

made to law enforcement while under arrest. The trial court heard the appellant's motions on the same day that they were filed and took them under advisement. The trial court overruled both of the appellant's motions on May 18, 2000.

The appellant waived her right to a jury trial, and her case was tried to the court on June 28, 2000. During the one-day trial, the appellant objected to the admission of the marijuana and the incriminating statements she made to the officers, alleging that they were obtained as the direct result of Trooper Bracker's illegally detaining her. The appellant's objections were overruled, and the evidence admitted. The appellant made an oral motion for judgment of acquittal at the close of the State's evidence and all the evidence, both of which were overruled by the court.

The trial court found the appellant guilty as charged. The appellant filed a motion for a new trial on July 24, 2000, which alleged that the trial court erred in overruling her motions to suppress and admitting at trial the marijuana and her incriminating statements made concerning the same because they resulted from her being unlawfully detained by Trooper Bracker. The motion was never ruled upon by the trial court, but was deemed overruled, pursuant to Rule 29.11(g),[2] ninety days later. On November 7, 2000, the trial court sentenced the appellant to a term of five years imprisonment in the Missouri Department of Corrections.

This appeal follows.

## Standard of Review

■ "At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Weddle*, 18 S.W.3d 389, 391 (Mo.App.2000) (citations omitted). Where a criminal defendant's pretrial motion to suppress evidence is denied, and the defendant objects to the admission of the evidence at trial, we will review the denial of the motion. *State v. Williams*, 9 S.W.3d 3, 11 (Mo.App.1999).

■ In reviewing a trial court's denial of a motion to suppress, we are limited to a determination of whether it is supported by substantial evidence. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). " 'The trial court's ruling on a motion to suppress is reversed only if it is clearly erroneous. The trial court's ruling is clearly erroneous if we are left with a definite and firm belief a mistake has been made.' " *State v. Hunter*, 43 S.W.3d 336, 340 (Mo.App.2001) (*quoting State v. Leavitt*, 993 S.W.2d 557, 560 (Mo.App.1999)). "In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be viewed in a light most favorable to the ruling of the trial court." *State v. Carter*, 955 S.W.2d 548, 560 (Mo. banc 1997) (*citing State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992)). A reviewing court will give deference to the trial court's factual findings and credibility determinations, but will review questions of law *de novo*. *Weddle*, 18 S.W.3d at 391–92.

### I.

■ In the appellant's sole point on appeal, she claims that the trial court erred in overruling her pretrial motions to suppress and admitting at trial the marijuana seized during the search of her purse, after being stopped for a perceived traffic

2. All rule references are to the Missouri Rules of Criminal Procedure (2001), unless otherwise indicated.

violation and being arrested on an outstanding warrant, which was unrelated to the stop, and any incriminating statements she made to law enforcement officials concerning the marijuana because the evidence sought to be suppressed was the fruit of an unlawful search and seizure. In claiming as she does, the appellant does not contend that Trooper Bracker's stop of her vehicle, based upon his belief that it was being operated without a license plate, was unlawful. Rather, she contends that after he stopped her vehicle and determined that it had a license plate, the purpose of the traffic stop was satisfied; and because he did not have a reasonable suspicion that she was guilty of any criminal wrongdoing to further detain her, his request for her to produce her license and vehicle registration thereafter was an unlawful seizure under the Fourth Amendment, rendering unlawful the resulting search of her purse and the seizure of the marijuana during the search, requiring the suppression of the marijuana and any incriminating statements she made to law enforcement concerning the marijuana.

For its part, the State concedes that when Trooper Bracker discovered that the appellant's vehicle had a valid Kansas license plate, the purpose of his stop was complete. The State also concedes that the trooper had no authority to further detain her in that he did not have a reasonable suspicion that she was engaged in criminal conduct. Nonetheless, the State contends that the subsequent search of the appellant's purse and the seizure of the marijuana were lawful because the trooper's request of the appellant to produce her license and vehicle registration was a consensual encounter, not a detention subject to Fourth Amendment protection. In contending that the initial encounter was consensual, the State argues that the appellant should have known that she was free to leave when the trooper informed

her that his reason for pulling her over proved to be unfounded. Finally, the State concedes that if the initial encounter between the appellant and the trooper was not consensual, then the resulting seizure of the marijuana and her statements to law enforcement concerning the marijuana were subject to suppression. Thus, as framed by the parties, the question for us to answer, in determining whether the trial court erred in overruling the appellant's pretrial motions to suppress, is whether there was sufficient evidence in the record for the trial court to find that the trooper's request of the appellant to produce her license and vehicle registration, after he had determined that her vehicle was displaying a Kansas license plate, was consensual and not subject to Fourth Amendment protection.

The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure from unreasonable searches and seizures. U.S. CONST. amend. IV. Missouri's corresponding constitutional search and seizure provision, found in Mo. CONST. art. I, § 15, is co-extensive with the Fourth Amendment. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999). As a general principle of the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, warrantless searches and seizures are deemed *per se* unreasonable. *State v. Tackett,* 12 S.W.3d 332, 337 (Mo. App.2000). "The State has the burden to justify a warrantless search and seizure by demonstrating that they fall within an exception to the warrant requirement." *Id.* (citations omitted).

One recognized exception to the warrant requirement of the Fourth Amendment is the "so-called *Terry* stop, which is a minimally intrusive form of seizure or 'semi-arrest' that is lawful if the

police officer has a reasonable suspicion supported by articulable facts that those stopped are engaged in criminal activity." *State v. Miller,* 894 S.W.2d 649, 651 (Mo. banc 1995) (*citing Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Stopping a motor vehicle and detaining its occupants for an alleged traffic violation constitutes a seizure within the meaning of the Fourth Amendment. *State v. Kovach,* 839 S.W.2d 303, 311 (Mo.App.1992). "Police are allowed to conduct *Terry* stops of moving vehicles upon a reasonable suspicion that the occupants are involved in criminal activity." *Miller,* 894 S.W.2d at 651 (citation omitted). If an officer has an articulable suspicion that the driver of a vehicle is committing, or has committed, a traffic violation, then there is a sufficient basis for a *Terry* stop of the vehicle. *State v. Slavin,* 944 S.W.2d 314, 317 (Mo.App. 1997). However, " '[i]f the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure.' " *Id.* at 317–18 (*quoting State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App. 1993)).

 Even if a law enforcement officer does not have reasonable suspicion to further detain a driver at the completion of a traffic stop, the officer may question the driver if the encounter has turned into a consensual one. *State v. Scott,* 926 S.W.2d 864, 869 (Mo.App.1996). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991) (*quoting California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690, 698 (1991)). " '[A] court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " *State v. Solt,* 48 S.W.3d 677, 680–81 (Mo.App.2001) (*quoting Bostick,* 501 U.S. at 439, 111 S.Ct. at 2389, 115 L.Ed.2d at 401–02)). " 'There is no litmus paper test for distinguishing a consensual encounter from a seizure or for ascertaining when a seizure has exceeded the bounds of an investigative stop.' " *Id.* at 680 (*quoting Scott,* 926 S.W.2d at 869). Although there is no clear test for determining when an encounter is a seizure, circumstances indicating that there may be a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)). This is not an exclusive list of the factors that are to be considered in determining whether an encounter is consensual for purposes of the Fourth Amendment. *Scott,* 926 S.W.2d at 869.

In support of its contention that Trooper Bracker's request of the appellant to produce her license and vehicle registration was a consensual encounter not subject to Fourth Amendment protection, the State first points to the fact that none of the *Mendenhall* factors were present. Our review of the record would support that fact. However, as noted, *supra,* those factors are not exclusive in determining the issue of whether an encounter was consensual such that the mere absence of those factors would not be conclusive on the issue.

In further support of its contention that the encounter between the appellant and

the trooper was consensual, the State argues that, although she was never expressly advised by Trooper Bracker that she was free to go, she should have reasonably understood that fact when the trooper essentially advised her that the reason he stopped her was unfounded. In that regard, Trooper Bracker testified at the suppression hearing that he advised her that:

> the reason why I stopped her was there was no front plate on the vehicle and there was no trailer plate, and that as I was approaching her car, I did observe that there was a Kansas plate, but I'd still like to see her driver's license and registration on her vehicle.

In our view, this circumstance was insufficient to convey to a reasonable person, who had been stopped for an apparent traffic violation, that he or she was free to go without complying with Trooper Bracker's request to produce her license and vehicle registration.

There is no dispute here that Trooper Bracker's first contact with the appellant was not consensual. It is agreed that as a lawful exercise of his authority as a state trooper, he stopped her for investigation of a perceived traffic offense by activating the emergency equipment on his patrol car. Acceding to this show of authority by the trooper, the appellant, as mandated by law, pulled her vehicle to the right shoulder of the highway and came to a complete stop. Upon exiting his patrol car and approaching the appellant's vehicle, the trooper observed a Kansas plate on the rear of her vehicle. At the motion hearing, he readily admitted that upon observing the license plate, he had no basis for detaining the appellant further such that she was free to go at that time. However, for some unexplained reason he did not advise her of that fact. Rather, he advised her of the purpose of his stop and the fact that once he had stopped her he had observed the Kansas license plate on the rear of the vehicle, which the State argues should have made it sufficiently clear to the appellant that she was free to go.

While we would agree with the State, that an individual in the appellant's situation, who was conversant with the parameters of a valid *Terry* stop, would have reasonably known from Trooper Bracker's comments as to why he stopped her that she was free to leave, we do not agree that a person not trained in the law would have known likewise. Common sense tells us that, as a rule, a motorist who is involuntarily stopped by a law enforcement officer, for whatever reason, is going to be very reluctant to leave the scene until it is perfectly clear that he or she is free to do so. "Certainly few motorists would feel free . . . to leave the scene of a traffic stop without being told they might do so." *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332 (1984). To leave the scene of a traffic stop without express permission would risk being pursued and stopped again. For instance, in this case, if the appellant would have ignored the trooper's request to produce her license and vehicle registration and driven away from the scene, without first receiving express permission to do so, the trooper mostly likely would have viewed that as evidence of flight and consciousness of guilt sufficient to warrant another investigative stop of her vehicle. *See State v. Hernandez*, 954 S.W.2d 639, 644 (Mo.App.1997) (holding that flight from police can help establish reasonable suspicion for an investigatory stop). As stated by the United States Supreme Court in *Berkemer*:

> A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his

license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way.

468 U.S. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. Thus, contrary to the State's assertion, the appellant, despite the trooper's advising her that he had determined that the reason she had been stopped was unfounded, would have believed that his request to produce her license and registration was part of the stop, with which she had no choice but to comply.

For the reasons stated, we find that the record was insufficient for the trial court to have found therefrom that a reasonable person in the appellant's situation would have believed, under the circumstances, that she was free to leave without acceding to the trooper's request to produce her license and registration, and, therefore, her compliance with that request did not constitute a consensual encounter. As this was not a consensual encounter, we find that the trooper's request constituted an unlawful seizure of the appellant. The question then becomes whether the evidence sought to be excluded was the product of this unlawful seizure, requiring its suppression at trial, as the appellant asserts.

 It is well settled that under the "exclusionary rule," the fruits of an unlawful search or seizure are inadmissible and cannot be used against a defendant at trial. *State v. Pattie*, 42 S.W.3d 825, 827 (Mo. App.2001) (*citing Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)). Evidence is considered fruit of the poisonous tree where its seizure directly results from an illegal search and/or seizure. *Miller*, 894 S.W.2d at 654. Here, in claiming that the evidence sought to be suppressed was fruit of her illegal seizure, the appellant argues that the trooper would not have known about the outstanding warrant for her arrest, which not only resulted in her arrest, but the search of her purse incident thereto and the seizure of the marijuana, if he had not first obtained her state identification card, which directly resulted from her unlawful seizure. The State does not dispute her argument that the seizure of the marijuana and her incriminating statements to law enforcement were the direct result of the trooper's request of her to produce her license and vehicle registration, and as pointed out, *supra*, essentially concedes that if the request was not a consensual encounter, the marijuana and her incriminating statements concerning the same were fruit of the poisonous tree subject to suppression.

 Having determined that the evidence in question should have been suppressed under the exclusionary rule, the appellant asks us to reverse her conviction and discharge her. This is not the proper remedy for trial error concerning the improper admission of evidence. In such instances, the proper remedy is to reverse and remand for a new trial. *State v. Wood*, 596 S.W.2d 394, 398 (Mo. *banc* 1980). On remand, the State can either choose not to re-try the case; proceed to trial without the excluded evidence; or proceed to trial and seek to introduce the disputed evidence by offering additional evidence sufficient to carry its burden of proof for its admission. *State v. Howell*, 524 S.W.2d 11, 20 (Mo. *banc* 1975); *State v. Davis*, 985 S.W.2d 876, 878 (Mo.App. 1998); *State v. Smith*, 966 S.W.2d 1, 9 (Mo.App.1997).

## Conclusion

The judgment of the circuit court convicting the appellant of possession of a controlled substance with intent to distribute, § 195.211, is reversed and the cause

remanded for further proceedings consistent with this opinion.

SPINDEN, C.J., and TURNAGE, Sr.J., concur.