formal opinion would lack jurisprudential value. The judgment is affirmed. Rule 30.25(b).

**STATE of Missouri, Respondent,**

v.

**Richard BENEDICT, Appellant.**

**No. WD 59862.**

Missouri Court of Appeals,
Western District.

Submitted March 19, 2002.

Decided June 18, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 25, 2002.

Tara L. Jensen, Asst. Public Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Sara L. Trower, Asst. Attorney General, Jefferson City, MO, for Respondent.

Before PAUL M. SPINDEN, C.J., P.J., JAMES M. SMART, Jr., and RONALD R. HOLLIGER, JJ.

### ORDER

PER CURIAM.

Richard Benedict appeals his conviction of first degree murder and armed criminal action. He contends the evidence was insufficient to support the conviction of first degree murder. Having considered his contentions on appeal, we affirm by summary order. A formal opinion would lack jurisprudential value.

The judgment is affirmed. Rule 30.25(b).

**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Matthew MARTIN,
Defendant/Appellant.**

**No. ED 80244.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

June 28, 2002.

J. Keith Essmyer, Jr., Jackson, MO, for appellant.

H. Morley Swingle, Pros. Atty., Cape Girardeau County, Jackson, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Defendant, Matthew Martin, appeals from the judgment upon his conviction for the class A misdemeanor of possession of drug paraphernalia with intent to use, Section 195.233, RSMo 2000, for which he was ordered to pay a fine of $150. Martin contends the trial court erred in failing to sustain his motion to suppress the evidence because the evidence was seized while he was illegally detained. Because we find the trial court erred in denying Martin's motion to suppress, we reverse and remand for further proceedings.

At 1:00 a.m. on the morning of July 19, 2001, Scott Schaffer, a deputy sheriff with the Cape Girardeau County Sheriff's Department, was on duty when he observed a vehicle that appeared to be driving without proper license plates. Deputy Schaffer pulled the vehicle over. Deputy Schaffer got out of his patrol car and walked up to the vehicle containing the driver, Janet Derossett, and three passengers including Martin, who was seated in the back seat. Upon approaching the vehicle, Deputy Schaffer saw a temporary tag displayed in the rear window that was fogged over. After examining the tag through the rear window, Deputy Schaffer explained to Derossett that he pulled her over because he could not see the proper licensing. Deputy Schaffer then asked Derossett to sit in

his patrol car because he wanted to make sure she had a valid driver's license.

Once Derossett was seated in the patrol car, Deputy Schaffer confirmed she had a valid driver's license and talked to her briefly about "what was going on." He asked what she was doing out so late. Derossett said she had been at a bar where she met some guys and they were all out "riding around." Deputy Schaffer asked who owned the vehicle and Derossett responded it was hers. He then asked if she had "anything illegal" in her vehicle and Derossett responded that she did not have anything illegal in her car. Deputy Schaffer then asked for consent to search the vehicle. Derossett said she did not care if he searched her vehicle.

After obtaining consent to search, Deputy Schaffer approached the vehicle and looked under the driver's seat. He immediately spotted a homemade smoking pipe made from a toilet paper roll. It had tin foil wrapped around it and contained a leafy green substance that Deputy Schaffer believed to be marijuana. Once he found the homemade pipe, Deputy Schaffer asked all the passengers to get out of the vehicle so he could conduct a more thorough search of the vehicle. After Martin exited the vehicle, Deputy Schaffer observed a blue metal "one-hitter" pipe behind Martin's right ear. Deputy Schaffer seized the pipe and issued Martin a ticket for possession of drug paraphernalia. Deputy Schaffer also issued Derossett a ticket for possession of drug paraphernalia and possession of less than 35 grams of marijuana while operating a motor vehicle.

At the bench trial, Martin filed a motion to suppress the pipe evidence on the ground that it was the product of an illegal detention. The trial court took Martin's motion with the case and subsequently denied the motion to suppress at the end of the evidence. The trial court found Mar-

tin guilty and convicted him of the class A misdemeanor of possession of drug paraphernalia in violation of Section 195.233, RSMo 2000. The trial court ordered Martin to pay a $150 fine. Martin now appeals.

The only issue raised on appeal is the trial court's failure to suppress evidence seized from Martin. Although not addressed by either party in their briefs, we must as an initial matter discuss that defense counsel stated "no objection" to the State's offer of the pipe at trial. Generally, stating "no objection" when evidence is introduced constitutes an affirmative waiver of appellate review of the issue. *State v. Stillman*, 938 S.W.2d 287, 290 (Mo.App. W.D.1997). However, defense counsel filed a written motion to suppress before trial and reasserted the motion at the start of trial. The trial court then ordered the motion taken with the case and denied the motion after the presentation of the evidence at trial. Despite counsel's response of "no objection" to the admission of the pipe, we find the trial court and opposing counsel understood that Martin's counsel did not intend to waive the issue contained in the motion to suppress the evidence. *See Stillman*, 938 S.W.2d at 290. Therefore, we will review the denial of Martin's motion to suppress the pipe evidence.

In reviewing a trial court's denial of a motion to suppress, we are limited to a determination of whether there is substantial evidence to support the trial court's decision. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). We will reverse the trial court's ruling only if it is clearly erroneous; that is, if we are left with a definite and firm belief that a mistake has been made. *State v. Tackett*, 12 S.W.3d 332, 336 (Mo.App. W.D.2000). In reviewing the trial court's order, we consider the facts and reasonable inferences in the light

most favorable to the trial court's ruling. *Id.* As the reviewing court, we will give deference to the trial court's factual findings and credibility determinations, but we will review questions of law, including whether the Fourth Amendment has been violated, de novo. *Id.*

Here, Martin contends the trial court erred in failing to suppress the pipe found behind his ear because the pipe evidence was the product of an illegal detention. Martin argues once Deputy Schaffer observed the temporary tag on the rear window, the purpose of the stop was over, and the result was an illegal detention. We agree.

The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure from unreasonable searches and seizures. U.S. Const. Amend. IV. Missouri's corresponding constitutional search and seizure provision, found in Mo. Const. Art. I, Section 15, is co-extensive with the Fourth Amendment. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999). As a general principle of the Fourth Amendment, subject to only a few specifically exceptions and well-delineated exceptions, warrantless searches and seizures are deemed per se unreasonable. *Tackett,* 12 S.W.3d at 337. The State has the burden to justify a warrantless search and seizure by demonstrating that they fall within an exception to the warrant requirement. *Id.* One recognized exception is that the Fourth Amendment is not violated when a law enforcement officer briefly stops or detains an individual or a moving vehicle to investigate when the officer has a reasonable suspicion supported by specific and articulable facts that criminal activity is afoot; the so-called *Terry* stop.[1] *State v. Slavin,* 944 S.W.2d 314, 317 (Mo.App. W.D.1997).

A law enforcement officer is authorized to conduct a *Terry* stop when he or she observes a vehicle violating the traffic laws of the state. *Id.* Stopping a motor vehicle and detaining its occupants for an alleged traffic violation constitutes a seizure within the meaning of the Fourth Amendment. *Id.* However, if the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure. *Id.* at 317–18.

Even if a law enforcement officer does not have reasonable suspicion to further detain a driver at the completion of a traffic stop, the officer may question the driver if the encounter has turned into a consensual one. *State v. Scott,* 926 S.W.2d 864, 869 (Mo.App.1996). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).

We find the case of *State v. Taber,* 73 S.W.3d 699 (Mo.App. W.D.2002) on point. In *Taber,* the police officer stopped the defendant when he did not see a license plate on the front of her vehicle or a license plate on the trailer it was towing. *Id.* at 701–02. Upon approaching the vehicle, the officer observed a Kansas license plate displayed on the rear of the vehicle. *Id.* at 702. The officer informed the defendant why he pulled her over and asked if he could see her driver's license and registration. *Id.* The officer returned to his car and radioed for a license and record check of defendant, which revealed an outstand-

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

ing warrant for the defendant. *Id.* The officer arrested the defendant on the warrant. *Id.* The officer retrieved the defendant's purse from the vehicle to give the defendant and upon searching it found burnt marijuana cigarette butts, a small plastic bag, and a large Ziploc bag of what appeared to be marijuana, a partially smoked marijuana cigarette, and approximately $5,800 in cash. *Id.*

The trial court denied the defendant's motion to suppress the marijuana and cash seized alleging that they were obtained as a result of the officer's illegal detention. *Id.* at 703. On appeal, the Western District found, and the State conceded, that the initial stop ended when the officer observed the license plate on the vehicle, and the officer had no authority to further detain the defendant because he did not have reasonable suspicion that she was engaged in criminal conduct. *Id.* at 704. The court further held that asking the defendant to produce her driver's license and registration was not a consensual encounter because the defendant, as a reasonable person, could not feel she was free to go without complying with the officer's request. *Id.* at 706. The court determined that the seizure was unlawful, and therefore, the evidence, as the fruits of an unlawful seizure, should have been excluded. *Id.* at 707.

▬▬ Although the defendant in *Taber* was the driver of the vehicle, a passenger may also challenge the validity of the stop. *See Tackett,* 12 S.W.3d at 337. Thus, the principles of *Taber* can be applied to Martin. Here, there is no dispute about the validity of the initial stop because Deputy Schaffer pulled the vehicle over for a perceived traffic violation. However, upon exiting his patrol car and approaching the vehicle, Deputy Schaffer observed the temporary tag in the rear window. At the trial, Deputy Schaffer

admitted that the initial purpose of his stop was fulfilled once he observed the temporary tag displayed in the rear window of the vehicle. Deputy Schaffer advised Derossett, as the driver, of the purpose of the stop and that once he had stopped her he observed the temporary tag in the rear window. At this time, the initial purpose of the stop had been fulfilled. Yet, Deputy Schaffer did not advise Derossett at that time that she was free to go. Instead, Deputy Schaffer asked Derossett to sit in his patrol car while he checked her driver's license. Deputy Schaffer testified that at the time he asked Derossett to sit in his patrol car he did not ask her about the temporary tag. He stated he had no reason to suspect that there was any marijuana in the vehicle or that Derossett had engaged in any illegal activity. Under the circumstances, we cannot say that a reasonable person, who had been stopped for an apparent traffic violation, would believe that he or she was free to go without complying with Deputy Schaffer's request. As stated in *Taber,* "a motorist who is involuntarily stopped by a law enforcement officer, for whatever reason, is going to be very reluctant to leave the scene until it is perfectly clear that he or she is free to do so." *Taber,* 73 S.W.3d at 706. As a result, her continued detention and compliance with Deputy Schaffer's request was not a consensual encounter. Thus, making the seizure was unlawful.

▬▬ It is well settled that under the "exclusionary rule," the fruits of an unlawful search or seizure are inadmissible and cannot be used against a defendant at trial. *See State v. Pattie,* 42 S.W.3d 825, 827 (Mo.App.2001). The pipe evidence was the fruit of an illegal detention and, therefore, should have been suppressed. Thus, we reverse and remand for a new trial. On remand, the State can either choose not to

re-try the case; proceed to trial without the excluded evidence; or proceed to trial and seek to introduce the disputed evidence by offering additional evidence sufficient to carry its burden of proof for its admission. *Taber*, 73 S.W.3d at 707; *State v. Davis*, 985 S.W.2d 876, 878 (Mo.App. 1998).

The judgment of the trial court convicting Martin of possession of drug paraphernalia in violation of Section 195.233, RSMo 2000, is reversed and the cause remanded for further proceedings consistent with this opinion.

CRAHAN, P.J., and HOFF, J., concur.