STATE of Missouri, Respondent,

v.

Danny ENGLAND, Appellant.

No. WD 60129.

Missouri Court of Appeals,
Western District.

Dec. 31, 2002.

Bruce R. Anderson, Kansas City, MO, for appellant.

James P. Barton, Jr., Marshall, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

Danny England appeals his conviction and sentence for the class A misdemeanor of driving while intoxicated, §§ 577.010 and 577.023.2, RSMo 2000.[1] On appeal, Mr. England claims that the trial court erred in denying his motion to suppress physical evidence and statements because the arresting officer unlawfully seized him. This court finds that the stop and arrest of Mr. England were proper and, therefore, the trial court correctly denied Mr. England's motion to suppress. Accordingly, the trial court's judgment is affirmed.

**Factual and Procedural Background**

On December 23, 2000, Officer Christopher Chamberlin of the Slater Police Department was following a vehicle on Highway 240 to make a traffic stop when his pursuit took him outside of the Slater city limits. As Officer Chamberlin and the ve-

---

**1.** All statutory references are to Revised Statutes of Missouri 2000.

hicle he was following slowed down, Officer Chamberlin saw another vehicle, a gray Ford Mustang, coming around a corner toward him at an excessive rate of speed. Believing the Mustang would not be able to fully turn the corner because of its excessive speed, Officer Chamberlin pulled his patrol car as far to the right side of the road as possible to avoid a head-on collision with the Mustang. Once on the side of the road, Officer Chamberlin activated his radar and aimed it at the Mustang. The radar showed that the Mustang was traveling at a rate of seventy-nine miles per hour. The posted speed limit on the road was fifty-five miles per hour, and the recommended speed limit for the corner was forty-five miles per hour. Officer Chamberlin noted the first three numbers of the Mustang's license plate. He then contacted the dispatcher and asked that the dispatcher notify the Saline County Sheriff's Department in case the Mustang continued traveling outside the Slater city limits.

After Officer Chamberlin completed the stop of the other vehicle, he drove back inside the Slater city limits to look for the Mustang. Officer Chamberlin saw the Mustang stopped at a stop sign inside the City of Slater. At that time, Officer Chamberlin identified the driver of the Mustang to be Mr. England. Mr. England drove the Mustang into the parking lot of a liquor store, and Officer Chamberlin followed him.

After Mr. England parked the Mustang, he got out of the car and began to walk toward the door of the liquor store. Officer Chamberlin, who was still in his patrol car, asked Mr. England to walk toward him. Mr. England complied. Officer Chamberlin then asked Mr. England if they had "met" on Highway 240 approximately fifteen minutes earlier. Mr. England initially said no but after Officer Chamberlin told Mr. England that he had read his license plate, Mr. England laughed and admitted they had.

Officer Chamberlin then contacted the Saline County dispatcher, who in turn contacted the Highway Patrol, to ask whether a Highway Patrol officer would be able to write Mr. England a summons for the speeding violation that Officer Chamberlin's radar gun and tape recorder had recorded.[2] Due to a miscommunication between the dispatcher and the Highway Patrol, however, the Highway Patrol officer mistakenly thought Officer Chamberlin was asking whether Officer Chamberlin could write Mr. England a ticket. As a result, the Highway Patrol officer responded that since Officer Chamberlin was outside of the city limits at the time the violation occurred, there was nothing Officer Chamberlin could do. Not wanting to tie up the radio any longer, Officer Chamberlin did not inquire further as to whether the Highway Patrol wanted to ticket Mr. England for the speeding violation at that time. Prior to the time that Officer Chamberlin obtained this information from the dispatcher and while he was still seated in his patrol car, he noticed that Mr. England's eyes were bloodshot and watery and his speech was slurred.

After Officer Chamberlin ended his conversation with the dispatcher, Mr. England laughingly told Officer Chamberlin that he travels eighty miles per hour wherever he goes and that Officer Chamberlin should have seen him on the last corner, because he had executed it at one hundred miles per hour. At that point, Officer Chamber-

2. At some point while Officer Chamberlin was talking to the dispatcher, Mr. England went into the liquor store to use the restroom.

lin got out of his patrol car and told Mr. England that "his behavior and driving habits created a grave risk to the well being of other motorists on the highways." While Officer Chamberlin was speaking to Mr. England, he noticed a strong smell of alcohol on Mr. England's breath. When Officer Chamberlin asked Mr. England if he had been drinking, Mr. England said that he had drunk a few beers earlier.

Because of the strong smell of alcohol and Mr. England's slurred speech, Officer Chamberlin asked Mr. England to submit to three field sobriety tests. Mr. England agreed, and Officer Chamberlin administered the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. Mr. England failed the first two tests, and his performance on the one-leg stand test was borderline. Based on his observations of Mr. England's driving, physical appearance, and performance on the field sobriety tests, Officer Chamberlin arrested Mr. England for driving while intoxicated.

Officer Chamberlin then drove Mr. England to the police station and administered a *Miranda*[3] warning and read the Implied Consent statement required by § 577.041. After obtaining Mr. England's consent, Officer Chamberlin administered a breathalyzer test. The test showed that Mr. England's blood alcohol content was .125%.

The State subsequently charged Mr. England, as a prior offender, with the class A misdemeanor of driving while intoxicated, §§ 577.010 and 577.023.2, and speeding, § 304.010. Before trial, Mr. England filed a motion to suppress physical evidence and statements obtained by Officer Chamberlin. In his motion, Mr. England argued that Officer Chamberlin had unlawfully stopped him for an alleged traffic violation that occurred outside the city limits of Slater, beyond Officer Chamberlin's jurisdiction. Thus, Mr. England contended, the physical evidence and statements Officer Chamberlin obtained were the product of an unconstitutional seizure and were inadmissible.

Officer Chamberlin and Mr. England testified during the suppression hearing. After the hearing, the court denied the motion. In its order, the court found that Officer Chamberlin had probable cause to stop Mr. England within the city limits of Slater because he personally observed the state law violation of speeding outside the Slater city limits and Officer Chamberlin had reasonable grounds to believe that Mr. England had committed the violation because "the officer had made note of the make, model[,] color, and the first three digits of the license plate number of the vehicle that he had earlier observed[.]" The court further found that after stopping Mr. England's car within the Slater city limits "and smelling the odor of intoxicants of the defendant's breath, etc.," Officer Chamberlin then had probable cause to arrest Mr. England for driving while intoxicated. Therefore, the court determined that neither the stop nor the subsequent arrest were illegal because the arrest occurred within Officer Chamberlin's territorial jurisdiction.

On the day of the trial, the State dismissed the speeding charge without prejudice. By agreement of the parties, the driving while intoxicated charge was submitted to the court on the evidence and exhibits offered during the suppression hearing. Mr. England also admitted that he had a prior conviction for driving while intoxicated. The court found Mr. England guilty of driving while intoxicated. Mr. England was sentenced to ten days in the county jail and fined $500. The court sus-

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pended execution of eight days of the jail sentence and placed Mr. England on court-supervised probation for two years. Mr. England filed this appeal.

### Standard of Review

 This court's review of a trial court's decision concerning a motion to suppress evidence "is limited to a determination of whether there is substantial evidence to support its decision." *State v. Tackett,* 12 S.W.3d 332, 336 (Mo.App.2000). The decision of the trial court will be reversed only if it is clearly erroneous and this court is "left with a definite and firm belief a mistake has been made." *State v. Leavitt,* 993 S.W.2d 557, 560 (Mo.App. 1999). This court will view all evidence and any reasonable inferences therefrom in the light most favorable to the ruling of the trial court. *Tackett,* 12 S.W.3d at 336. "At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Weddle,* 18 S.W.3d 389, 391 (Mo. App.2000). While this court defers to the trial court's credibility determinations and factual findings, " '[t]he ultimate issue of whether the Fourth Amendment was violated is a question of law which this court reviews *de novo.*' " *State v. Pfleiderer,* 8 S.W.3d 249, 253 (Mo.App.1999) (quoting *State v. McFall,* 991 S.W.2d 671, 673 (Mo. App.1999)).

### Stop and Arrest were Proper

 In his sole point on appeal, Mr. England challenges the legality of the traffic stop. Mr. England claims that Officer Chamberlin had no lawful authority under the United States and Missouri Constitutions to seize him for committing a traffic offense outside the Slater city limits. Therefore, Mr. England contends that the trial court erred in overruling his motion to suppress his statements and physical evidence obtained after Officer Chamberlain stopped him.

Both parties characterize Mr. England's encounter with Officer Chamberlin as a seizure invoking constitutional protection. The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. *State v. Woolfolk,* 3 S.W.3d 823, 828 (Mo.App. 1999). Missouri's corresponding search and seizure provision, found in article I, Section 15, of the Missouri Constitution, is co-extensive with the Fourth Amendment. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999).

 Warrantless seizures are generally deemed *per se* unreasonable unless they fall under certain specific recognized exceptions. *State v. Taber,* 73 S.W.3d 699, 704 (Mo.App.2002). One of the exceptions is a *Terry* stop. *Id.* at 704–05. Under the principles outlined in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may briefly stop a person when the officer has a reasonable suspicion, based upon specific and articulable facts, that the person has or is engaged in criminal activity. *State v. David,* 13 S.W.3d 308, 311 (Mo.App.2000).

 Reasonable suspicion of criminal activity includes reasonable suspicion of a traffic violation. *Taber,* 73 S.W.3d at 705. "If an officer has an articulable suspicion that the driver of a vehicle is committing, or has committed, a traffic violation, then there is sufficient basis for a *Terry* stop of the vehicle." *Id.* "A routine traffic stop based upon the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *Woolfolk,* 3 S.W.3d at 828.

In this case, Officer Chamberlin testified that he observed Mr. England driving

twenty-four miles per hour over the posted speed limit. Exceeding the posted speed limit by twenty miles per hour or more is a class B misdemeanor under § 304.010.10. Therefore, Officer Chamberlin observed Mr. England committing a violation of state traffic laws.

Mr. England contends that Officer Chamberlin was not permitted to stop him based upon that violation, however, because the violation occurred outside the city limits of Slater and, therefore, outside of Officer Chamberlin's jurisdiction as a municipal police officer. In support of his claim, he relies on cases which state that a police officer does not have the authority to stop or arrest persons outside the officer's jurisdiction. *See City of Fredericktown v. Bell,* 761 S.W.2d 715, 717 (Mo.App. 1988); *Settle v. State,* 679 S.W.2d 310, 317 (Mo.App.1984); *Rodgers v. Schroeder,* 220 Mo.App. 575, 287 S.W. 861, 864 (1926). In these cases, the stops and subsequent arrests were accomplished outside of the arresting officers' jurisdictions. *See Fredericktown,* 761 S.W.2d at 716; *Settle,* 679 S.W.2d at 314–15; and *Rodgers,* 287 S.W. at 863.

These cases do not apply here, however, because Officer Chamberlin did not stop or arrest Mr. England outside of the Slater city limits. Officer Chamberlin stopped Mr. England inside the Slater city limits because the officer recognized Mr. England's car, from its make, model, color, and three of its license plate numbers, as being the same car that he had observed speeding a short time earlier.

■ That the stop was based upon a traffic violation that occurred outside the Slater city limits does not make Officer Chamberlin's stop inside the city limits unlawful. It is true that outside of the Slater city limits, Officer Chamberlin's status was that of a private citizen. *Settle,* 679 S.W.2d at 317. " 'In Missouri, a private citizen can make an arrest on a showing of commission of a felony and reasonable grounds to suspect the arrested party.' " *Id.* (quoting *State v. Fritz,* 490 S.W.2d 30, 32 (Mo.1973)). Speeding is only a misdemeanor offense, so Officer Chamberlin, acting as a private citizen outside of his jurisdiction, was not permitted to stop or arrest Mr. England outside of the Slater city limits based upon the speeding violation.

■ Simply because Officer Chamberlin was not permitted to stop or arrest Mr. England at the location where the speeding violation occurred does not mean that Officer Chamberlin was prohibited from later stopping Mr. England's vehicle, within Officer Chamberlin's jurisdiction, based upon his having observed that violation. When Officer Chamberlin reentered the Slater city limits, he again assumed the status of a police officer. A police officer is justified in forcibly stopping an individual based upon information received from a known and reliable informant, where the information is immediately verifiable at the scene. *See State v. Stillman,* 938 S.W.2d 287, 290 (Mo.App.1997) (citing *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972)). In *Adams,* 407 U.S. at 146–47, 92 S.Ct. at 1923–24, the Supreme Court held that the police officer's *Terry* stop of the defendant based upon information the officer obtained from a known and reliable informant was lawful because the information carried sufficient indicia of reliability to justify the stop.

■ The "informant" in this case is Officer Chamberlin, in his status as a private citizen. While the cases relied upon involve information obtained by a person other than the officer who executes the stop, the crux of the inquiry is the reliability of the information, not the identity of

the informant. Officer Chamberlin testified at the suppression hearing as to the information he obtained as a private citizen which led to his stopping Mr. England in his capacity as a Slater police officer. Thus, the court was able to assess the reliability of Officer Chamberlin's information in determining whether he was justified in making the stop. *See State v. Franklin,* 841 S.W.2d 639, 645 (Mo. banc 1992) (noting that in *Adams,* 407 U.S. at 146–47, 92 S.Ct. at 1923, the government "presented evidence as to the source of the information that led the officer to make the stop," thereby providing the court with the ability "to assess the reliability of the information in determining whether the police were justified in making the stop"). Clearly, the trial court found Officer Chamberlin's information reliable. This court is to defer to the trial court's credibility determinations. *Pfleiderer,* 8 S.W.3d at 253.

█ Deferring to the trial court's credibility determinations, this court finds that while acting as a private citizen, Officer Chamberlin personally observed Mr. England speeding. This personal observation constituted reliable information justifying Officer Chamberlin's later stop of Mr. England inside the Slater city limits, in Officer Chamberlin's capacity as a Slater police officer. Officer Chamberlin had reasonable suspicion that a traffic violation had occurred; therefore, he was permitted to make a *Terry* stop of Mr. England's vehicle. *Taber,* 73 S.W.3d at 705.

█ The detention for a routine traffic stop "may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *Woolfolk,* 3 S.W.3d at 828. A "reasonable investigation" "may include 'asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose.'" *State v. Slavin,* 944 S.W.2d 314, 318 (Mo.App.1997) (citations omitted). "If a stop extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion of another crime is found during the period of lawful seizure." *State v. Watkins,* 73 S.W.3d 881, 883 (Mo.App.2002).

Here, Officer Chamberlin asked Mr. England to walk toward the patrol car. Once at the patrol car, Officer Chamberlin asked Mr. England if they had "met" approximately fifteen minutes earlier on the highway where Officer Chamberlin observed Mr. England speeding. After Mr. England admitted that they had, Officer Chamberlin contacted the Saline County dispatcher to determine whether a Highway Patrol officer would be able to ticket Mr. England for the speeding violation. Due to a miscommunication between the dispatcher and the Highway Patrol, however, the dispatcher did not inform Officer Chamberlin as to whether a Highway Patrol officer could ticket Mr. England but instead said that Officer Chamberlin could not.

While Officer Chamberlin was still seated in his patrol car obtaining this information from Mr. England and the dispatcher, Officer Chamberlin noticed that Mr. England's eyes were bloodshot and watery and his speech was slurred. Mr. England then volunteered that he drives eighty miles per hour wherever he goes and bragged that he had driven around the last corner at one hundred miles per hour. When Officer Chamberlin got out of his car to warn Mr. England about driving dangerously, he smelled alcohol on Mr. England's breath.

█ The investigatory stop of Mr. England had not yet terminated when Officer Chamberlin noticed Mr. England's bloodshot and watery eyes, slurred speech,

and the smell of alcohol on his breath. *See id.* at 884 (noting that investigatory stops for traffic violations are usually found to be completed after the records check is completed, the trooper receives information back from dispatch, the trooper processes and issues the citation or warning, the trooper returns the license and citation to the driver, or the trooper tells the driver to go back to the driver's car). Bloodshot and watery eyes, slurred speech, and the smell of alcohol on one's breath are indicia of intoxication. *See Rogers v. Dir. of Revenue,* 947 S.W.2d 475, 477 (Mo.App. 1997). These indicia of intoxication were a factual predicate for reasonable suspicion of the crime of driving while intoxicated and justified extending the stop beyond the time necessary for Officer Chamberlin to investigate the speeding violation. *See Watkins,* 73 S.W.3d at 883. In fact, Mr. England's speeding, combined with his indicia of intoxication, constituted probable cause to arrest Mr. England at that point for driving while intoxicated. "Probable cause to arrest for driving while intoxicated exists when an officer observes a traffic violation or erratic vehicle operation and, after stopping the vehicle, notices indicia of driver intoxication." *White v. Dir. of Revenue,* 946 S.W.2d 277, 279 (Mo.App. 1997). Nevertheless, Officer Chamberlin waited to arrest Mr. England until after Mr. England failed two out of three field sobriety tests. More than sufficient evidence of probable cause existed to arrest Mr. England for driving while intoxicated.

Because the stop and subsequent arrest of Mr. England were proper, the trial court did not err in denying his motion to suppress. The judgment of the trial court is affirmed.

All concur.