**STATE of Missouri, Respondent,**

v.

**Jerry Grant LeMASTERS, Appellant.**

**No. 19041.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 20, 1994.

William E. Hickle, Carnahan, Carnahan & Hickle, Rolla, for appellant.

John D. Beger, Pros. Atty., Tod M. Davis, Asst. Pros. Atty., Phelps County, Rolla, for respondent.

CROW, Judge.

Appellant was tried by the court without a jury and found guilty of the class B misdemeanor of driving while intoxicated. § 577.-010, RSMo 1986. Following the imposition of sentence, the terms of which need not be recounted, Appellant brought this appeal.

Appellant's brief presents two points relied on, the first of which asserts the trial court erred in receiving evidence of "all events" that occurred after a trooper of the Missouri State Highway Patrol asked Appellant to be seated in a patrol car. Appellant's second point avers the trial court erred in receiving evidence of the results of a Breathalyzer test.

Appellant filed a pretrial motion to suppress the evidence challenged in his first point. The trial court conducted an evidentiary hearing, made written findings of fact and conclusions of law, and denied the motion. Appellant preserved the point by timely and correct objection at trial.

When reviewing a trial court's ruling on a motion to suppress, an appellate court will affirm the ruling if the evidence is sufficient to sustain the trial court's finding.

*State v. Blankenship*, 830 S.W.2d 1, 14[18] (Mo. banc 1992). The facts and reasonable inferences arising therefrom are to be stated favorably to the order challenged on appeal. *Id.*

So viewed, the evidence establishes that about 11:00 p.m., May 30, 1992, Trooper Kyle Holt of the Missouri State Highway Patrol observed a "dune buggy type vehicle" northbound on U.S. Highway 63 in Rolla. It displayed a license plate. Holt narrated: "It didn't resemble any make or model that I would recognize. I followed the vehicle to check on the registration of the vehicle."

Holt was informed by radio that the license plate had been issued to Appellant for a 1960 Chevrolet. Holt noted the vehicle was "street legal," i.e., it had all equipment required by law.

After Holt had followed the vehicle approximately five minutes, it entered a driveway at a residence in Rolla and stopped. Up to that point, Holt had observed no weaving, swerving, or other "driving anomalies or errors."

Holt, who was in uniform, armed with a holstered pistol, and driving a marked patrol car, stopped in the street in front of the residence.

Appellant, who was driving the unconventional vehicle, got out and walked toward the residence. Holt exited his patrol car and, remaining in the street, called to Appellant, "May I speak to you about your vehicle, please, in reference to registration."[1]

Appellant walked to Holt's patrol car. Asked what occurred next, Holt testified, "I just asked if he would have a seat in my patrol car."

Appellant got into the patrol car. So did Holt. There, they began a conversation about Appellant's vehicle. During the conversation, Holt "noticed the smell of intoxicants on [Appellant's] person."

Holt thereupon had Appellant perform some "field sobriety tests." Appellant's performance, coupled with the odor of alcohol and the "confused" nature of his speech, led Holt to conclude Appellant was intoxicated.

---

**1.** Elsewhere during his testimony, Holt said his first words to Appellant were: "Excuse me, sir."

Holt arrested Appellant for driving while intoxicated and took him to jail. There, by means of a "Breathalyzer 900," Holt administered a test to determine Appellant's level of intoxication. The device showed Appellant had ".18 percent blood alcohol by weight."

Appellant maintained in the trial court that Holt had no reason to believe or suspect that Appellant was committing a crime at the time Holt beckoned Appellant to discuss his vehicle's registration. Therefore, argued Appellant, Holt's "detention" of Appellant violated Appellant's right to be secure against unreasonable searches and seizures guaranteed by Amendment IV of the Constitution of the United States. It necessarily followed, insisted Appellant, that all evidence developed by Holt after he asked Appellant to have a seat in the patrol car must be suppressed.

The trial court, citing testimony by Holt that he had no reason to believe Appellant was committing criminal activity and no reason to believe Appellant's vehicle was not a 1960 Chevrolet, and relying on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), held Holt had no reasonable suspicion that the registration of Appellant's vehicle was illegal. Consequently, concluded the trial court, Holt had no probable cause to stop Appellant.

That conclusion led the trial court to consider whether Holt's actions constituted a "stop" or "seizure." On that issue, the trial court found guidance in *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

In *Chesternut*, four officers in a marked police cruiser were on routine patrol in Detroit. At an intersection, they saw a car pause at the curb. A man exited the car and approached a pedestrian. When the pedestrian saw the police cruiser, he began running. The officers remained in their vehicle and followed the pedestrian around the corner "to see where he was going." The police overtook the pedestrian and drove alongside him a short distance. The officers observed the pedestrian discard a number of packets from a pocket. An officer exited the police cruiser to examine the packets; he discovered they contained pills. Meanwhile, the pedestrian, who had run only a few paces farther, stopped. Surmising the pills contained codeine, the officer arrested the pedestrian for possession of narcotics. During an ensuing search, heroin and other contraband drugs were found in the pedestrian's possession.

The issue, as framed by the Supreme Court of the United States, was whether the "investigatory pursuit" was a seizure within the meaning of Amendment IV of the Constitution of the United States. 486 U.S. at 569, 108 S.Ct. at 1977. The Supreme Court cited with approval the following passage from *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968):

> "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

*Chesternut*, 486 U.S. at 573, 108 S.Ct. at 1979.

The Supreme Court in *Chesternut* next noted it had adopted a test in *I.N.S. v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762[2], 80 L.Ed.2d 247 (1984), to determine whether a person has been "seized" within the meaning of Amendment IV. *Chesternut*, 486 U.S. at 573, 108 S.Ct. at 1979. The test provides that the police can be said to have seized an individual only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Id.*, 486 U.S. at 573, 108 S.Ct. at 1979[1].

The Supreme Court held in *Chesternut* that the police conduct did not amount to a seizure, as it would not have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. 486 U.S. at 569, 108 S.Ct. at 1977.

Based on *Chesternut*, the trial court held Appellant was not seized by Holt within the meaning of Amendment IV. In its analysis, the trial court noted Holt did not use a siren or lights to stop Appellant; instead, Appel-

lant stopped of his own volition at his residence. The trial court also noted there was no command by Holt to Appellant, no display of a weapon by Holt, and no evidence of any aggressive conduct by him. As reported earlier, the trial court denied Appellant's motion to suppress.

In his brief, Appellant asserts two issues must be addressed to determine whether his rights under Amendment IV were violated: (1) whether Holt had reason to believe Appellant was engaged in criminal activity, and (2) whether Holt's actions constituted a "detention" of Appellant sufficient to invoke his rights under Amendment IV.

As we have seen, the trial court found for Appellant on issue "(1)." The evidence amply supports the trial court's finding on that issue, hence we accept that finding. *Blankenship*, 830 S.W.2d at 14[18]. Appellant's first point therefore hinges on issue "(2)."

Regarding that issue, Appellant argues the trial court's reliance on *Chesternut* was misplaced in that the officers there did not communicate with the pedestrian, but merely followed him. Here, says Appellant, Holt spoke to him, led him to believe he (Holt) "was investigating possible criminal activity," and asked him (Appellant) to sit in the patrol car.

Appellant cites three federal cases which, according to him, are factually analogous to this case. Our study of those cases reveals they are akin to the instant case in that they deal with encounters between citizens and police officers, but their facts are too different from the circumstances here to be controlling. As observed in *Chesternut*, any assessment as to whether police conduct amounts to a seizure implicating Amendment IV must take into account all of the circumstances surrounding the incident in each individual case. 486 U.S. at 572, 108 S.Ct. at 1979.

A case strikingly similar to the instant case is *United States v. Angell*, 11 F.3d 806 (8th Cir.1993). There, an officer of a sheriff's department in Minnesota was notified about an unattended van parked in the middle of a road. Arriving at the site about 1:50 a.m., the officer radioed the van's license number for a registration check. While awaiting the information, the officer observed an approaching car. It stopped at a stop sign within a few feet of the officer's patrol car. The officer aimed his flashlight on the car and its two male occupants. While still in his patrol car, the officer asked the men who they were and where they were going. The driver identified himself and said they were on the way home, a few miles away. The officer asked the driver if he had been drinking; the driver answered no. The officer told the men, "Stay there, I want to talk to you."

The officer walked to the car, shining his light into it. He asked the driver for a driver's license and the passenger for identification. The driver produced a Minnesota driver's license bearing his name. The passenger said he had no identification, but gave his name. As the officer questioned the men, he observed in the car's back seat a pickaxe covered with wet mud and embedded grass. The officer also saw containers of plant fertilizer and plant-starter trays. Additionally, the officer noted the passenger was sweating and covered with mud. Asked about that, the men explained this resulted from helping a stranded motorist near an airport. The officer disbelieved that explanation because the roads around the airport are paved.

The officer ran a warrant check on the men and found there was an outstanding arrest warrant for the driver. The officer radioed for back-up officers and arrested the driver. A search of the driver and the car, combined with further investigation, ultimately led to discovery of a marijuana-growing operation at the men's home.

Endeavoring to suppress the incriminatory evidence, the men argued that the officer's initial stop constituted an unconstitutional seizure, hence all evidence obtained as a result thereof should be barred. 11 F.3d at 808.

Rejecting the argument, the appellate court noted the officer did not turn on his patrol car lights, did not block the pathway of the men's car, did not draw a weapon, and did not physically touch the men. The court acknowledged the officer's statement clearly indicated he wanted the men to remain

where they were so he could talk with them. However, considering the surrounding circumstances, the court held that neither the officer's language nor his conduct constituted anything other than what a reasonable person would have construed as a consensual encounter between a law enforcement officer and a member of the public. *Id.* at 809. The opinion continued:

> "Had [the officer] couched his request in more indirect language, such as, say, 'Could I talk to you guys a minute,' or 'Would you hold up a minute, please,' there would be no question about the consensual nature of the subsequent conversation between [the officer] and the [men]. In the light of the totality of the circumstances, we conclude that [the officer's] actual language, although perhaps somewhat more peremptory than precatory in tone, did not convert what would clearly have been a consensual encounter into a seizure within the meaning of the Fourth Amendment."

*Id.* at 809–10.

Here, Holt's request to Appellant was indubitably more precatory than the officer's statement to the men in *Angell.* Additionally, Holt did not accuse Appellant of any law violation. Holt merely asked to speak to Appellant about the registration of his vehicle. Given the unconventional nature of the vehicle, such a request could hardly have been a shock.

We find nothing coercive about Holt's request that Appellant be seated in the patrol car. It was after 11:00 p.m., and Holt was on a public street. There is no evidence of the illumination, but it is inferable that Holt and Appellant could see each other better in the patrol car where light was available. Furthermore, Holt testified, "I needed to use the radio and so we both sat in my patrol car." Viewing the evidence and inferences favorably to the trial court's ruling, *Blankenship,* 830 S.W.2d at 14[18], we conclude that conferring in the patrol car was a more businesslike and professional method than talking in the street.

It is also noteworthy that Holt did not approach Appellant on the latter's property, nor did Holt park his patrol car behind Appellant's vehicle to block it. Holt remained in the street and voiced his request there.

■ Appellant points out he testified he entered the patrol car because he took Holt's request as an order. In Appellant's words, "I did not want to, but I felt like I had to."

Appellant's state of mind is not a factor in the "seizure" test set forth in *Chesternut,* 486 U.S. at 573, 108 S.Ct. at 1979[1]. As explained there:

> "While the test is flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police. The test's objective standard—looking to the reasonable man's interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. This 'reasonable person' standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached."

*Id.,* 486 U.S. at 574, 108 S.Ct. at 1979–80[4] (citation omitted).

There are two federal cases involving encounters between individuals and police officers where the officers' conduct was more authoritative than Holt's conduct in the instant case. They are: *United States v. Analla,* 975 F.2d 119 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1853, 123 L.Ed.2d 476 (1993), and *United States v. De La Rosa,* 922 F.2d 675 (11th Cir.1991). In each, the court held the encounter was not a seizure within the meaning of Amendment IV.

Considering the totality of the circumstances in the instant case and viewing the evidence and reasonable inferences favorably to the trial court's ruling, we cannot convict the trial court of error in finding that Appellant was not seized by Holt within the meaning of Amendment IV. Appellant's first point is denied.

■ Appellant's second point reads:

"The court erred in admitting into evidence the results of the Breathalyzer test purporting to indicate the level of Appellant's blood alcohol content because no proper foundation was laid for the admission of such results in that the State produced no evidence indicating that a maintenance check of the [Breathalyzer] had been performed within thirty-five days before the date of Appellant's arrest pursuant to Rule 19 CSR 20–30.031(3)."

Holt testified that at the time he administered the Breathalyzer test to Appellant, he (Holt) held a "Type III permit." Holt also testified he had used the device before, that it appeared to be operating correctly when he tested Appellant, that he (Holt) readied the device by following the required "checklist," that he checked the "reagents," that the temperature was "within specifications," and that he purged the device of any prior test.

When the prosecutor asked Holt about the result of the test, Appellant's lawyer registered this objection:

"I'd object, Your Honor, on the basis of insufficient foundation. There is insufficient information to determine the reliability and the proper functioning of the machine that was used to conduct the breath test."

The trial court overruled the objection and allowed Holt to testify that the result was ".18 percent blood alcohol by weight."

Appellant's second point is governed by *Barish v. Director of Revenue*, 872 S.W.2d 167 (Mo.App.W.D.1994). It holds:

"A proper objection to evidence is one that is 'sufficiently clear and definite so that a court will understand the reason therefor; an objection encompassing a broad range of situations that are not readily apparent does not preserve error.' *Reed [v. Director of Revenue]*, 834 S.W.2d [834], 836 [ (Mo.App.E.D.1992) ] (citing *State v. Bartholomew*, 829 S.W.2d 50, 53 (Mo.App. 1992)). Because of the detailed proof required to lay the proper foundation for the admission of breathalyzer test results, an objecting party must specify to the court and opposing counsel in what manner the test was improperly administered. *Bar-*

*tholomew*, 829 S.W.2d at 53. A general 'lack of foundation' objection will not preserve alleged errors in the admission of breathalyzer test results because that objection by itself fails to direct the trial court's attention to the specific foundational element considered deficient. *Stewart v. Director of Revenue*, 702 S.W.2d 472, 476 (Mo. banc 1986)."

*Barish*, 872 S.W.2d at 175[11].

Appellant's objection at trial did not mention the regulation on which he now attempts to predicate error. Consistent with *Barish*, we hold Appellant failed to preserve his second point for review.

Judgment affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.