**STATE of Missouri, Plaintiff–
Appellant,**

v.

**Robert P. MANLEY, Defendant–
Respondent.**

No. 25644.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 2003.

not and have not addressed that claim of trial court error.

Darrell L. Moore and Tyson J. Martin, Office of the Prosecuting Atty., Springfield, for appellant.

Randell K. Wood and Noah K. Wood, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

Pursuant to section 547.200.1, the State of Missouri ("State") appeals from an interlocutory order entered by the circuit court of Greene County that suppressed evidence (marijuana) seized from a car driven by Robert Manley ("Defendant").[1] The State contends that the trial court erred in sustaining Defendant's motion to suppress because the evidence was seized pursuant to a lawful "consensual encounter" between the Defendant and the police. We disagree. We affirm.

### FACTS

■ We must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the lower court's ruling. *State v. Pfleiderer*, 8 S.W.3d 249, 253[2] (Mo.App.1999). During the morning of February 14, 2002, state highway trooper Mory McKnight ("McKnight") was patrolling Interstate 44, as a drug interdiction officer, with his canine unit, Enik. As McKnight was "sitting in the crossover of I-44," Defendant drove past in a late model, silver Ford Taurus with Texas license plates. McKnight pulled his cruiser out and started in the same direction that Defendant was proceeding.

Defendant then "immediately" took exit 72 for Highway 266 which "aroused [McKnight's] suspicion" as he believed Defendant was trying to avoid him. McKnight followed Defendant as he turned onto Highway 266, and he noticed that Defendant's "wheel just touched the

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

yellow line" that demarcated the driving lane from the "center turn lane." Defendant then turned into a restaurant, crossing into the center lane. McKnight stated that if one's tire touches a yellow line, then this is a violation of state law for "failing to drive within a single lane of highway." McKnight claimed to see this "touching" even though he was one hundred yards behind Defendant's vehicle.

McKnight followed Defendant into the restaurant parking lot, parking his car so that it "was actually facing the side of [Defendant's] car." As Defendant exited his vehicle, McKnight asked Defendant to speak with him, and Defendant agreed. First, McKnight asked Defendant "where he was coming from," "how long he had been there," "whose car it was," and told him why he was being questioned, i.e., the alleged traffic violation. This questioning was described as the "initial conversation" and took place beside Defendant's car. McKnight testified that, at this point, his "suspicions [had] been aroused" because it appeared that Defendant was trying to avoid him, he was driving a rental car with Texas license plates, and he stayed in Arizona only for a short period of time.

After the initial conversation, McKnight asked for Defendant's license and rental car agreement and asked Defendant to "have a seat in [his] patrol car." While in the patrol car, Defendant was nervous, and McKnight learned that he had previous drug convictions. Also, during this time, McKnight continued to question Defendant. From an examination of the rental car agreement and the license, McKnight deduced that Defendant had been deceptive during the initial conversation. This further aroused his suspicions. Thereafter, McKnight (aided by Enik) conducted a canine sniff of the vehicle, without Defen-

dant's consent, that produced two duffel bags filled with marijuana.

Defendant was charged with drug trafficking in the second degree in violation of section 195.222. The trial court suppressed the evidence because McKnight "did not have cause to stop" the Defendant. This appeal followed.

## DISCUSSION AND DECISION

In its only point on appeal, the State alleges the trial court erred because McKnight was not required to have cause to stop Defendant. The State argues that McKnight's *entire contact* with Defendant was a "consensual encounter[;]" consequently, the seizure requirements of the federal and state constitutions are inapplicable.

To further explain the State's argument, it claims that no evidence supports the proposition that "the initial contact" was a seizure. In making this argument, the State characterizes the initial contact as being both *before and after* Defendant was asked to sit in the patrol car.[2] Then, the State argues that "[o]nce it is established that the initial contact was not a seizure, the issue becomes, did ... McKnight have the requisite cause to continue the investigation." The State argues that McKnight gained reasonable suspicion *to search Defendant's car* when: (1) Defendant appeared nervous; (2) McKnight discovered he had a history of drug convictions; (3) McKnight believed his story regarding his travels was inconsistent; and (4) Defendant was travelling in a rental car from a border state. With the exception of the fourth reason, the State admits that the aforementioned grounds for reasonable suspicion to search the car arose only *after* Defendant was asked to sit in the patrol car.

---

**2.** The State appears to combine into one inci-

dent these two periods of time.

The State has failed to address whether Defendant was "seized" within the meaning of the Fourth Amendment when McKnight asked Defendant to have a seat in the cruiser and received and retained his license and rental car agreement, and whether McKnight had reasonable suspicion, *existing at that time*, to warrant the seizure. We believe these two questions are dispositive on appeal.

■ The Fourth Amendment to the United States Constitution and Article I, Section 15 of the Missouri Constitution are coextensive, both preserving the right of citizens to be free from unreasonable searches and seizures.[3] *State v. Deck*, 994 S.W.2d 527, 534 (Mo.banc 1999). Generally, a warrant based upon probable cause is required to justify a search and seizure. *Id.* Specific and well-delineated exceptions do exist to the warrant requirement such as a *Terry* stop, and the state has the burden to prove that a warrantless search or seizure falls within an exception.[4] *State v. Martin*, 79 S.W.3d 912, 916[7, 8] (Mo. App.2002).

■ Consensual encounters are not seizures within the meaning of the constitution; thus, they do not require a warrant. *United States v. Mendenhall*, 446 U.S. 544, 552–555, 100 S.Ct. 1870, 1876–1878, 64 L.Ed.2d 497 (1980). It is beyond doubt, however, that consensual questioning can ripen into a "seizure." *Florida v. Royer*, 460 U.S. 491, 501–03, 103 S.Ct.

1319, 1326–27, 75 L.Ed.2d 229 (1983); *Deck*, 994 S.W.2d at 535. A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. . . ." *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879. The test is whether a reasonable person, considering the totality of the circumstances, would feel free to leave, i.e., disregard police questioning and walk away. *Mendenhall*, 446 U.S. at 554, 557, 100 S.Ct. at 1877, 1879; *Settle v. State*, 679 S.W.2d 310, 316[4] (Mo.App.1984).

■ Once a seizure has occurred and to constitutionally justify such an action, the police must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 18, 88 S.Ct. at 1880. If the state fails in this regard, then the evidence collected as a result of the stop must be suppressed pursuant to the fruits of the poisonous tree doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Pfleiderer*, 8 S.W.3d at 257.

■ Here, McKnight initially "contacted" Defendant and indicated that he wanted to talk to Defendant regarding an alleged traffic violation.[5] McKnight was in full uniform with a holstered weapon and driving a marked police cruiser. McKnight told Defendant that he had vio-

___

3. It is due to this coextensive protection that federal precedents are persuasive when deciding Missouri cases. *State v. Werner*, 9 S.W.3d 590, 595 (Mo.banc 2000); *State v. Welch*, 755 S.W.2d 624, 631 (Mo.App.1988).

4. The so-called *Terry* stop was defined in *Terry v. State of Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

5. The police are fully authorized to seize a person on the basis of a traffic violation and conduct a reasonable investigation. *State v.*

*Taber*, 73 S.W.3d 699, 705 (Mo.App.2002). Although McKnight reported that he "contacted [Defendant] for a traffic violation," the State has abandoned on appeal any argument that "touching" a yellow line on the highway constitutes a violation of state law. *See* § 304.015. The State has apparently recognized the tenuous nature of this claim. In any event, this court need not decide that question as it has not been advanced on appeal to justify McKnight's actions.

lated a traffic law and questioned him about his travels and the rental car. At this point, McKnight's only specific and articulated reasons for talking with Defendant were his belief that Defendant was trying to avoid him, Defendant was driving a rental car from a border state, and Defendant only briefly stayed in Arizona.

Then, McKnight asked for the rental agreement and Defendant's drivers license, and he requested that Defendant "have a seat in [his] patrol car." Defendant agreed, and McKnight retained the agreement and the license, never indicating to Defendant that he was free to leave the scene or the police car. This was a seizure, akin to what occurred in *Florida v. Royer.*

In *Royer*, the United States Supreme Court initially found that a seizure does not occur when police merely approach citizens in a public place and ask them questions. *Id.*, 460 U.S. at 497, 103 S.Ct. at 1324. The Court also found that "[a]sking for and examining Royer's [plane] ticket and his driver's license were no doubt permissible in themselves." *Id.*, 460 U.S. at 501, 103 S.Ct. at 1326. The Court also held that:

> "[W]hen the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and with-

out indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment."

*Id.*[6]

To summarize the case here, it was reasonable for the court to infer that McKnight was identified as a police officer, he accused Defendant of a traffic violation, he received and retained Defendant's license and rental car agreement, he asked that Defendant sit in the patrol car, and he failed to indicate to Defendant that he was free to leave. Based on the *Royer* analysis, Defendant was seized within the meaning of the Fourth Amendment once these events occurred.[7]

As aptly stated by one federal court, "if an officer retains one's driver's license, the citizen would have to choose between the Scylla of consent to the encounter or the Charybdis of driving away and risk being cited for driving without a license." *United States v. Weaver*, 282 F.3d 302, 311 (4th Cir.2002), *cert. denied*, 537 U.S. 847, 123 S.Ct. 186, 154 L.Ed.2d 75. Certainly, no reasonable person would feel free to leave when faced with the circumstances Defendant "encountered."

 The second and final question then becomes whether McKnight possessed reasonable suspicion to seize Defendant when he asked Defendant to sit in his

---

**6.** *See also, Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (holding officers seized Brown when they detained him for the purpose of identification pursuant to a state statute); *State v. Thomas,* 989 S.W.2d 605, 606 n. 3 (Mo.App.1999) (finding a seizure occurred when officer told vehicle occupants he would have to check licenses); and *Settle,* 679 S.W.2d at 316 (holding that detention for purposes of requiring identification is a seizure).

**7.** We find the following statement apropos:

> "Common sense tells us that, as a rule, a motorist who is involuntarily stopped by a law enforcement officer, for whatever reason, is going to be very reluctant to leave the scene until it is perfectly clear that he or she is free to do so. 'Certainly few motorists would feel free ... to leave the scene of a traffic stop without being told they might do so.' To leave the scene of a traffic stop without express permission would risk being pursued and stopped again."

*Taber,* 73 S.W.3d at 706 (citations omitted).

patrol car. The specific and articulable facts cited as grounds for reasonable suspicion, existing at the time of the seizure, are as follows: (1) McKnight believed Defendant was trying to avoid him; (2) he was driving a rental car with Texas license plates; and (3) he only stayed in Arizona for a short period.

McKnight testified that he thought Defendant was being elusive because he immediately exited after passing the police car, and the exit did not have signs for food or gas. McKnight, however, admitted he was incorrect because the exit was marked "Food, Exit 72." The rest of the articulated facts McKnight pronounced "could 'describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure.'" *State v. Talbert*, 873 S.W.2d 321, 324 (Mo.App.1994) (quoting *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980)).

The facts articulated by McKnight are not the type of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 18, 88 S.Ct. at 1880. To the contrary, given these facts, the trial court was correct to implicitly find that McKnight's actions were unreasonable as the circumstances indicated that he possessed merely an inchoate, unparticularized suspicion or "hunch." *Id.*, 392 U.S. at 27, 88 S.Ct. at 1883. It would be entirely unreasonable to conclude that, faced with these three facts,

criminal activity was afoot. *Id.*, 392 U.S. at 30, 88 S.Ct. at 1884. Consequently, McKnight had no reasonable suspicion to seize Defendant, and the trial court properly suppressed the evidence. *See Wong Sun*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Pfleiderer*, 8 S.W.3d at 256–57.

In making this determination, we have not ignored the principal case relied upon by the State; however, this case is factually distinct. In *State v. LeMasters*, 878 S.W.2d 485 (Mo.App.1994), the police officer followed the defendant home, parked his patrol car on the street in front of the residence, and asked the defendant if he would speak to him as the defendant was approaching his house. The officer then asked him to have a seat in the patrol car, and while a conversation ensued therein, the officer noticed the aroma of intoxicants emanating from the defendant. There is no indication that the officer asked for and retained the defendant's license or registration. The court noted that the conversation was businesslike, professional, and non-accusatory. *Id.* at 489. Moreover, the court stated that the activity occurred at 11:00 P.M.; consequently, it was necessary to converse in the patrol car so the two could see each other better inside the car. *Id.* The distinguishing facts here are that McKnight told Defendant that he violated a traffic law, McKnight received and retained his license and rental agreement, McKnight requested he sit in the car, and Defendant was an out-of-state traveller with nowhere to go other than his vehicle. These facts make *LeMasters* inapposite.[8]

---

8. The State also seems to rely upon *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), wherein the United States Supreme Court held that a state court erred in adopting a *per se* rule that a bus encounter necessarily constitutes a seizure within the meaning of the Fourth Amendment. *Id.*, 501 U.S. at 439–440, 111 S.Ct. at 2388–89. The court "refrain[ed] from deciding whether or not a seizure occurred in this case[]" as the lower court did not consider the totality of the circumstances. *Id.*, 501 U.S. at 437, 111 S.Ct. at 2388. The court also noted that the defendant was specifically advised that he had the right to refuse consent. *Id.*, 501 U.S. at 432, 111 S.Ct. at 2385. Also,

The order granting Defendant's motion to suppress is affirmed.

PARRISH, J., and RAHMEYER, C.J.–P.J., concur.

the defendant's freedom of movement was constricted by a factor independent of police conduct, i.e., he was a passenger on a bus. *Id.,* 501 U.S. at 436, 111 S.Ct. at 2387. Those are not the facts of this case.