**STATE of Missouri, Appellant,**

v.

**Arthur RICHMOND, Respondent.**

No. 25935.

Missouri Court of Appeals,
Southern District,
Division One.

May 17, 2004.

Robert E. George, Mt. Vernon, for appellant.

John A. Lewright, Cassville, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Pursuant to section 547.200.1(3), RSMo 2000, Appellant State of Missouri ("State") appeals from an interlocutory order entered by the Circuit Court of Lawrence County suppressing evidence—specifically marijuana and a knife—seized from an automobile driven by Respondent Arthur Richmond ("Defendant"). The State raises two points of trial court error, discussed below. We affirm.

■ "Our review of the trial court's ruling by which it sustained Defendant's motion to suppress is limited to a determination of whether the evidence was sufficient to support the trial court's finding in light of all the circumstances and the total atmosphere of the case." *State v. Talbert*, 873 S.W.2d 321, 323 (Mo.App.1994). We view the evidence and all reasonable inferences therefrom, in the light most favorable to the trial court's ruling. *State v. Manley*, 115 S.W.3d 398, 399 (Mo.App. 2003). "We are also mindful of the fact that we must defer to the trial court concerning the credibility of witnesses and the weight to be given the evidence." *Talbert*, 873 S.W.2d at 323.

At approximately 7:20 a.m. on May 21, 2002, Corporal Gary Braden of the Missouri Highway Patrol was patrolling Interstate 44 and traveling east in Lawrence County when he observed a red Ford Contour with a Michigan license plate make two lane changes without signaling. Corporal Braden stopped the vehicle by use of the patrol cruiser's emergency lighting equipment.

As he approached the vehicle, Corporal Braden identified the Defendant as the driver and sole occupant of the vehicle. As part of his initial visual observations in approaching the vehicle, Corporal Braden noted that an atlas was lying on the front passenger seat and an additional atlas was located on the rear seat. While there were various food and beverage containers throughout the vehicle, he did not observe any luggage or clothing in the passenger compartment of the vehicle. Defendant was barefooted on this cool May morning. Corporal Braden characterized Defendant as being overly polite, extremely nervous, exhibiting a shaky voice, and visibly shaking when Defendant handed him his driver's license. Defendant agreed to get into Corporal Braden's patrol car so a warning ticket could be issued.

While in the patrol cruiser, Defendant stated he was driving his girlfriend's car and had been traveling alone from California back to his home state of Michigan. He stated that he had been visiting relatives, but that his girlfriend was pregnant and had remained home. After handing Defendant back his driver's license and a

warning ticket, Corporal Braden then asked Defendant if he had illegal guns or drugs in the vehicle. Defendant answered "No." Corporal Braden asked permission to search the vehicle, and Defendant refused. The record shows that Corporal Braden then repeatedly asked Defendant for permission to search the vehicle, but Defendant would not consent.

At approximately 7:30 a.m., Corporal Braden advised Defendant that he was free to go, but that his vehicle was being detained until a canine unit could be brought to the scene to "sniff" the vehicle. One minute later, Defendant exited the patrol car and entered the Ford Contour to retrieve his shoes and commenced to roll up the windows of the vehicle. Corporal Braden then explained to Defendant that if he were leaving he would like to have the ignition key because the car would have to be towed. Defendant handed the keys to Corporal Braden and returned to the patrol car to give Corporal Braden relevant information about Defendant so the vehicle could be returned if no contraband was found. Shortly thereafter, Defendant walked away from the scene.

At about 8:20 a.m., a drug dog conducted an external "sniff" of the vehicle and "alerted" with a "positive indication" on the vehicle. Corporal Braden then conducted what both parties have described as a probable cause search of the vehicle at the side of the road and found about 39.840 kilograms of marijuana in the luggage located in the trunk of the vehicle. Defendant was arrested in Springfield, Missouri, later in the day.

The State first maintains the trial court erred on the basis that it failed to recognize that under the standard of "reasonable suspicion for an investigation detention" rather than a probable cause standard, the arresting officer had a legal right to detain the vehicle driven by Defendant so as to allow a canine unit reasonable time to arrive at the scene for further investigation of the vehicle for contraband materials.

 "The Fourth Amendment to the United States Constitution and Article I, Section 15 of the Missouri Constitution are coextensive, both preserving the right of citizens to be free from unreasonable searches and seizures." *Manley*, 115 S.W.3d at 401. "A routine traffic stop based upon the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *State v. Woolfolk*, 3 S.W.3d 823, 828 (Mo.App.1999). "The fact that the police may detain a person for a routine traffic stop does not justify indefinite detention, however." *Id.* "The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *Id.* "[S]uch an investigation would properly encompass: 1) asking for the subject's driver's license and registration, 2) requesting that the subject sit in the patrol car, and 3) asking the driver about his or her destination and purpose." *Id.; see State v. Slavin*, 944 S.W.2d 314, 318 (Mo. App.1997). "Once these steps have been completed and the officer has checked the driver's record, the officer must allow the driver to proceed without further questioning *unless* 'specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity.'" *Woolfolk*, 3 S.W.3d at 828–29 (quoting *Slavin*, 944 S.W.2d at 318). "If 'the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure.'" *Id.* at 829 (quoting *Slavin*, 944 S.W.2d at 317–18). "Whether a sufficient new factual predicate for reasonable suspicion exists must be determined based upon the totality of the circumstances." *Id.; see United States v. Cortez*,

449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). "'Reasonable suspicion must be based upon a specific, articulable set of facts indicating that criminal activity is afoot.'" *Woolfolk*, 3 S.W.3d at 829 (quoting *Slavin*, 944 S.W.2d at 318). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002).

■ In the instant case, after several attempts by Corporal Braden to obtain Defendant's consent to search the car, Corporal Braden returned Defendant's documents to him, issued a warning ticket, and informed Defendant he was free to go. Indeed, during Corporal Braden's cross-examination at the motion hearing Corporal Braden readily conceded that at this point in time he had no right to detain Defendant. The only articulable facts he gave for continuing to hold the vehicle was because Defendant had been "nervous" during the course of the traffic stop and the passenger compartment contained "food and beverage containers, [and] the atlas," and that "[Defendant was] making his journey from Los Angeles, California to Michigan." The officer also related that he was suspicious because Defendant refused to consent to the search of the vehicle. Based on the foregoing, it is our view that "[i]t would be entirely unreasonable to conclude that, faced with these … facts, criminal activity was afoot." *Manley*, 115 S.W.3d at 403.

■ We initially observe that there was nothing inherently contradictory or suspicious about Defendant's description of his journey from Los Angeles to Michigan in his girlfriend's vehicle. Furthermore, "[n]ervousness alone does not give rise to reasonable suspicion, although, together with other factors, it can be relevant in determining whether reasonable suspicion exists under the totality of the circumstances." *Woolfolk*, 3 S.W.3d at 829. "Similarly, the presence of fast food wrappers in cars is commonplace in highway travel in this era of carry-out dining and cannot serve to separate the suspicious from the innocent traveler." *Id.; see also State v. Smith*, 926 S.W.2d 689, 693–94 (Mo.App.1996) (presence of junk food wrappers, water jug, and map in car did not create basis for suspicion of criminal activity). "Nor may the officer use a driver's refusal to consent to a voluntary request to search a vehicle 'as support of the requisite reasonable suspicion to support the search.'" *Woolfolk*, 3 S.W.3d at 830 (quoting *Slavin*, 944 S.W.2d at 319).

In making our determination, we do not ignore the principal case relied on by the State, i.e., *State v. Joyce*, 885 S.W.2d 751 (Mo.App.1994). *Joyce*, however, is distinguishable on its facts. In *Joyce*, the defendant and a companion were in a rented automobile traversing from Arizona to the East Coast. *Joyce*, 885 S.W.2d at 753. As they approached the Springfield, Missouri, city limits, traveling on Interstate 44, a Missouri Highway Patrol Trooper stopped the vehicle for a traffic violation. *Id.* at 752. During conversations with the driver of the vehicle, the trooper noted that the driver was nervous and was talking loudly and rapidly. *Id.* The driver informed the trooper that the *Joyce* defendant had rented their vehicle in Arizona, that the two were going to ski in Connecticut, and that they planned a stop in Baltimore, Maryland. *Id.* at 753. On the other hand, when the *Joyce* defendant was questioned, he related that he and the driver were going to ski in Lake Placid, New York, some 190 miles away from Connecticut, and he denied they had plans to stop in Baltimore. *Id.* The *Joyce* defendant was also nervous and visibly shaking. *Id.* The *Joyce* defendant denied the trooper permission to search the vehicle. *Id.*

This Court determined that the foregoing circumstances gave rise to "articulable suspicion" that supported the trooper's detention and then search of the *Joyce* defendant's rented vehicle. *Id.* at 754, 756.

Here, of course, Defendant was not operating a rented vehicle, he was the sole occupant of the vehicle, and there was nothing contradictory about the story he related to the officer regarding his driving from Los Angeles to Michigan. This scenario "could 'describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case would justify a seizure.'" *Talbert,* 873 S.W.2d at 324 (quoting *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980)).

■ Based on the totality of the circumstances presented, Corporal Braden did not have a "particularized and objective basis for suspecting the particular person stopped of criminal activity," sufficient to have continued detaining and then searching the Defendant's vehicle. *Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 695. Thus, the evidence collected from the stop must be suppressed pursuant to the fruits of the poisonous tree doctrine, and the trial court properly suppressed the evidence. *Manley,* 115 S.W.3d at 403; *see Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Point One is denied.

■ In its second point on appeal, the State maintains that the trial court erred in suppressing the evidence of contraband material because the Defendant had no standing to claim the protection of the Fourth Amendment to the United States Constitution, in that Defendant had no reasonable expectations of privacy given that he had abandoned the vehicle he was driving and left it in possession of the arresting officer. We disagree.

■ The facts do not support the State's contention that the vehicle had been voluntarily relinquished or abandoned by Defendant. After Corporal Braden finished questioning Defendant, he then informed Defendant he was "free to go," but that the vehicle was being detained. There was no practical way for Defendant to exercise this right to leave save by walking along the side of Interstate 44 and leaving his vehicle behind. Indeed, when Defendant attempted to lock up his vehicle, Corporal Braden asked him for the keys to the vehicle. Defendant had no choice but to accede to the demand of the law enforcement officer, who was armed and determined to detain the vehicle. This scenario hardly comports with a voluntary relinquishment by Defendant of his vehicle. "A seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen....'" *Id.* at 401 (alteration in original) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). We agree with the trial court's characterization of the continued detention of Defendant's vehicle as constituting a "qualified detention" of Defendant. As previously explained in Point One, Corporal Braden was not permitted to continue detaining either Defendant or his vehicle in the absence of specific and articulable facts and rational inferences drawn from those facts suggesting criminal activity, which were not shown. *Id.* at 402–03. Point Two is denied.

The order granting Defendant's motion to suppress is affirmed.

PREWITT and GARRISON, JJ., concur.